IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ALONSO LAZOS,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>ROB JEFFREYS, MICHAEL TURNER, MAX NANCE, TOBY OLIVER, SARAH JOHNSON, JOHN BARWICK, and MATTHEW SWALLS,<br><br>　　　　　Defendants. | Case No. 21-cv-116-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

On August 12, 2022, Alonso Lazos filed his Amended Complaint asserting claims pursuant to 42 U.S.C. § 1983 for various violations of his constitutional rights while he was part of the Illinois Department of Corrections' ("IDOC") Impact Incarceration Program ("IIP") from 2019 to 2020.

This matter is currently before the Court on a partial motion to dismiss (Doc. 58) filed by Defendant Rob Jeffreys, Max Nance, Toby Oliver, and Michael Turner, seeking to dismiss Counts 2 through 4 for failure to state an adequate constitutional violation. Defendants also argue that Counts 3 and 4 are barred by *Heck v. Humphrey,* 512 U.S. 477 (1994). Lazos filed a response in opposition to the motion (Doc. 59). Defendants filed a reply brief (Doc. 60). Defendants Matthew Swalls, Sarah Johnson, and John Barwick later joined in the motion to dismiss (Doc. 63).

## BACKGROUND

On February 2, 2021, Lazos filed his original Complaint alleging violations of his constitutional rights while in IDOC's Impact Incarceration Program ("IIP"), a six-month boot camp program run by IDOC at Dixon Springs. His Amended Complaint (Doc. 50) alleges four counts related to his treatment at the IIP:

Count 1: Eighth Amendment excessive force claim against Michael Turner and Max Nance for an alleged assault which took place in October 2019.

Count 2: Fourteenth Amendment due process claim against Rob Jeffreys, Michael Turner, Max Nance, Toby Oliver, Sarah Johnson, John Barwick, and Matthew Swalls for improperly terminating Lazos from the IIP.

Count 3: False imprisonment claim against Jeffreys, Oliver, Turner, Johnson, Barwick, Swalls, and Nance for unlawfully terminating Lazos from the IIP resulting in additional incarceration.

Count 4: Cruel and Unusual Punishment claim against Jeffreys, Oliver, Turner, Johnson, Barwick, Swalls, and Nance.

(Doc. 50).

As it relates to Counts 2-4, Lazos alleges that on November 20, 2019, he was notified of two pending disciplinary hearings for two disciplinary reports issued against him (*Id*. at pp. 5-6). On November 24, 2019, Lazos participated in the first hearing (*Id*. at p. 6). Oliver was the hearing officer and found that Lazos failed to comply with the IIP program requirements (*Id*.). He recommended Lazos receive 14 additional days in the IIP program. On the same day, Oliver also conducted a hearing on the second disciplinary ticket (*Id*.). Lazos was found guilty of this infraction, refusing to comply with a head call

(described by defendants in the motion as use of the restroom) by sitting on the floor and indicating that he wanted to quit. For this infraction, Oliver recommended Lazos be terminated from the IIP. Barwick and Swalls approved the recommendation of termination (*Id.*). On February 4, 2020, Jeffreys and Johnson also approved the termination (*Id.*).

Lazos alleges that the infractions were based on the false statements of Turner and Nance, the defendants he alleges used excessive force on him in October 2019 (*Id.* at pp. 4-5). He filed a grievance regarding the discipline. On February 10, 2020, the grievance officer noted that Illinois Administrative Rule 460.60 states one basis for termination from the IIP is 12 or more demerits (*Id.* at p. 7). The officer noted that no demerits were found in Lazos's record. The officer also noted that there were no specific details as to the derogatory remarks used by Lazos nor did staff indicate what the acts of insolence by Lazos were or when they occurred (*Id.*). The grievance officer deemed the grievance "mixed," and the Chief Administrative Officer concurred with the findings (*Id.*).

## LEGAL STANDARDS

When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement is satisfied if the complaint (1) describes the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and (2) plausibly suggests that

the plaintiff has a right to relief above a speculative level. *Bell Atl.*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl.*, 550 U.S. at 556). "[I]t is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atl.*, 550 U.S. at 555).

## ANALYSIS

### A. Due Process Claims

In order for Lazos to state a procedural due process violation, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An administrative code violation, however, does not translate into a constitutional violation upon which a civil rights claim may rest. A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied*, 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

Lazos argues that the violation of the Illinois Administrative Code, specifically the portion of the Code setting forth when an inmate may be involuntarily terminated from the IIP, amounted to a state-created liberty interest which entitled him to due process protections. A state can create protected liberty interests "by placing substantive

limitations on official discretion." *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001); *Shango v. Jurich*, 681 F.2d 1091, 1099 (7th Cir. 1982) ("duly promulgated prison regulations may give rise" to a liberty interest). But when those regulations allow for the exercise of discretion and do not limit the decision of officials, the regulation does not create a liberty interest. *Shango,* 681 F.2d at 1100. For instance, an inmate does not have a protected liberty interest in serving his sentence at a particular prison. *Id*. To create a liberty interest, "a state must employ 'language of an unmistakably mandatory character, requiring that certain procedures "shall," "will," or "must" be employed…and that [the challenged action] will not occur absent specific substantive predicates.'" *Woods v. Thieret*, 903 F.2d 1080, 1082 (7th Cir. 1990) (quoting *Russ v. Young*, 895 F.2d 1149, 1153 (7th Cir. 1990)). "[A] liberty interest is created only where the state regulation in question contains 'specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Woods*, 903 F.2d at 1082-83 (*quoting* Russ, 895 F.2d at 1153).

Section 460.60 of the Impact Incarceration Program provides that a "committed person *may* be involuntarily terminated"… from the program for the following reasons:

1) The committed person is found guilty of a major rule violation in accordance with 20 Ill. Adm. Code 504.Subpart A.

2) The committed person is determined not to meet the eligibility criteria or requirements for Department approval as outlined in Sections 460.20 and 460.30.

3) Noncompliance with program requirements as documented by 12 or more demerits.

20 Ill. Admin. Code 460.60(b) (emphasis added).

Prior to termination from the program, the committed person "shall be afforded a disciplinary hearing in accordance with 20 Ill. Admin. Code 504.Subpart A or a Program Review Hearing in accordance with Section 460.70." 20 Ill. Admin. Code 460.60(c). Under Section 460.70, "[a] Program Review Hearing shall be conducted when" a committed person has been referred for possible termination from the program "for reasons other than a major rule infraction as set forth in Section 460.60." 20 Ill. Admin. Code 460.70(b). Like in a normal prison disciplinary proceeding, a committed person facing termination from the program is entitled to written notice of the hearing, the right to appear in-person before an impartial body, the right to call witnesses and present evidence, and a written statement of the findings and reasons for the action taken. *See* 20 Ill. Admin. Code 460.70(c)-(j).

Lazos admits in his brief that he does not challenge the procedure he received in the disciplinary hearing or that he was factually innocent of the charges (Doc. 59, p. 7). Instead, he argues that his termination was unlawful because it was not one of the three grounds for dismissal set forth in Section 460.60(b). The language of Section 460.60(b) does seem to limit the reasons that committed persons may be terminated from the IIP to the three grounds stated, but within those three grounds there is ample discretion provided to prison officials as to what constitutes grounds for termination. For instance, one ground on which a committed person may be terminated is if it is determined that the committed person no longer meets the eligibility criteria or requirements for Department approval as outlined in Sections 460.20 and 460.30. 20 Ill. Admin. Code 460.60(b)(2). Section 460.30 provides the Department with ample discretion on

determining whether a committed person qualifies for program approval including: whether the person's participation in the program would pose a risk to safety and security, the committed person's disciplinary record and institutional adjustment, "among other matters." 20 Ill. Admin. Code 460.30(a). Thus, whether Lazos was eligible to participate in the program was at the sole discretion of IDOC officials. *See Brown v. Wisconsin Dep't of Corrs.*, 26 F. App'x 548, 549 (7th Cir. 2001). Further, the IIP Act provides that a "committed person may be removed from the program for a violation of the terms or conditions of the program or in the event he is for any reason unable to participate." 730 ILCS 5/5-8-1.1(h). The Act also directs the Department to promulgate rules governing conduct which "could result in removal from the program." *Id*. The Act gives discretion to the Department as to the rules and the conduct required for the program.

The Court finds no liberty or property interest in entering or remaining in the program. Whether Lazos qualified for the program upon entry or while in the program was based on the discretion of the Department and, if not successful, his term of imprisonment was as set forth by the Court in the sentencing order. *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000) (Finding plaintiff had no due process claim when there was "no fixed set of criteria entitl[ing] anyone to admission [to the special program], and exclusion leaves the prisoner with the normal attributes of confinement."); *Brown*, 26 F. App'x at 549 (no liberty or property interest when the department had discretion as to whether a committed person participated in an intensive sanctions program and "excluding him left him in an ordinary prison setting.").

Although Lazos argues that he was subjected to continued confinement beyond

the date he would have been released if he had completed the IIP, he had no right to participate or be released early from prison. There is no constitutional right "of a convicted person to be conditionally released before the expiration of a valid sentence" unless a statute or regulation created "an expectancy of release which, once created by state law, was protectible under the Due Process Clause." *Felce v. Fielder*, 974 F.2d 1484, 1490 (7th Cir. 1992) (state statute entitling inmates to mandatory release after serving two-thirds of their sentence, so long as they had not violated any prison regulations, created a protectible liberty interest); *Taylor v. Edgar*, 52 F. App'x 825, 826 (7th Cir. 2002) ("in the absence of a state rule creating a specific entitlement, prisoners have no liberty interest in placement"); *Jones v. Skalski*, 494 F. App'x 667, 670 (7th Cir. 2012) (no authority presented demonstrated that participation in Wisconsin's Challenge Incarceration Program gave an inmate a protected liberty interest in early release). The Court finds that the IIP Act does not create such an expectation of early release. Although Lazos argues that upon successful completion of the program, his "sentence shall be reduced to time considered served upon certification…that the offender has successfully completed the program," he fails to allege that this created a liberty or property interest. The Seventh Circuit, in determining whether completion of the IIP acted to suspend the remainder of the prison sentence, found that Illinois's program most closely resembled a commutation or pardon. *See United States v. Gajdik*, 292 F.3d 555, 558-60 (7th Cir. 2002). There is no liberty or property interest in obtaining a pardon or commutation in Illinois. *Bowens v. Quinn*, 561 F.3d 671, 673 (7th Cir. 2009). Thus, nothing in the Act or regulations gave Lazos a protected liberty or property interest in early release from incarceration. Lazos has not

alleged a deprivation of his liberty or property rights which would entitle him to due process protections. And to the extent that he was entitled to any procedural protections, Lazos acknowledges that he does not claim any such procedural irregularities (Doc. 59, p. 7).

Because Lazos lacked an expectation of early release, any potential claims under the Eighth Amendment for being held beyond his possible release date if he had completed the program also fail. *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014) (In order to demonstrate an Eighth Amendment claim, a plaintiff must allege that "the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was a result of the defendants' deliberate indifference."). Although Lazos argues in his response that he was held beyond his sentence, he was not held beyond his term of imprisonment because he served his original term after being terminated from the IIP which was required by the Act and the Code. *See* 20 Ill. Admin. Code 460.60(e) (individuals terminated from the program "shall serve the sentence imposed by the sentencing court"); *Jones,* 494 F. App'x at 670 (no deliberate indifference when the law did not confer an unambiguous right to release). Thus, Lazos's Eighth Amendment claims also fail.[1]

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Doc. 58) is **GRANTED**. Counts 2-4 are **DISMISSED without prejudice** for failure to state a claim.

---

[1] Because the Court finds that Lazos fails to state a claim in Counts 2-4, the Court need not decide if the claims are also barred by *Heck*.

Only Count 1 against Turner and Nance for excessive force remains in the case. Because there are no further claims against Jeffreys, the Court **DENIES as moot** Jeffreys's motion for protective order (Doc. 47). Lazos only sought a deposition from Jeffreys related to his due process and excessive incarceration claims which are now dismissed.

The parties' joint motion to stay discovery (Doc. 65) is also **DENIED as moot**. The parties are **DIRECTED** to meet and confer on new deadlines for the close of discovery and dispositive motions for the remaining claim in the case. A proposed scheduling order should be submitted to the Court (via email to NJRpd@ilsd.uscourts.gov) by **April 3, 2023**.

**IT IS SO ORDERED.**

DATED: February 22, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**